UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

```
*************************************
Donald B. Rhodes,                     *
                                      *
           Plaintiff                  *
v.                                    *
                                      *
Holden Engineering & Surveying, Inc., *
                                      *
           Defendant                  *
                                      *
*************************************
```

## COMPLAINT

NOW COMES the plaintiff Donald B. Rhodes, by and through his attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

**I.   Parties**

1. The plaintiff Donald B. Rhodes is a former employee of the defendant and a Participant in the Holden Engineering & Surveying, Inc. Incentive Compensation Plan. Mr. Rhodes resides at 159 Cross Road, Strafford, New Hampshire 03884.

2. The defendant Holden Engineering & Surveying, Inc. is a New Hampshire corporation with a principal place of business located at 9 Constitution Drive, Bedford, New Hampshire 03110.

**II.  Jurisdiction and Venue**

3. This Court may exercise subject matter jurisdiction over this matter pursuant to the provisions of 29 U.S.C. §1132(e). The Court may exercise personal jurisdiction over the defendant because it is a resident of this judicial district.

4. Venue is proper because the acts and omissions giving rise to this matter occurred within this judicial district.

**III.     Facts**

5. The plaintiff was an employee of the defendant between 1984 and 1995.

6. The defendant established a deferred compensation plan called the "Holden Engineering & Surveying, Inc. Incentive Compensation Plan" (the Plan) on or about August 1, 1986.  Exhibit A.

7. The Plan was maintained by the defendant primarily for the purpose of providing deferred compensation "for a select group of management or highly compensated personnel employed by the [defendant]."  Exhibit A at p. 1.

8. The defendant's Plan was unfunded because the Plan's assets were not segregated from the defendant's general assets.  Id. at §3.3 ("Funds Remain General Assets of the Employer") at p. 11 ("The funds invested hereunder, plus any income generated therefrom, shall continue for all purposes to be a part of the general funds of the Employer.").  See Miller v. Heller, 915 F.Supp. 651, 658 (S.D.N.Y. 1996) (explaining that the "essential feature" of a funded deferred compensation plan is that its assets are "segregated" from the employer's "general assets").

9. The defendant's Plan therefore qualifies as a "top hat" plan.  29 U.S.C. §1051(2) (defining the "top hat" exclusion as applying to a "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees").

10. The plaintiff was designated a Participant in the Plan for Plan Years 1986, 1987, 1988 and 1989.

11. In order to be credited for deferred incentive compensation for any given Plan Year, a Participant in the Plan must have maintained "continued full-time employment with the

Employer at all times during such Plan Year." Exhibit A at §2.3 ("Employer's Designation of Annual Deferred Incentive Compensation") at p. 7.

12. The plaintiff satisfied this contingency for all Plan Years in question, maintaining continued full-time employment with the defendant throughout Plan Years 1986, 1987, 1988 and 1989.

13. By Notice dated April 4, 1988, the defendant notified Mr. Rhodes that he had been "credited with $15,000 with respect to Deferred Incentive Compensation for each of the years 1986-1988, inclusive." Exhibit B.

14. By Notice dated February 27, 1989, the defendant notified Mr. Rhodes that deferred incentive compensation in the amount of $15,000.00 had been "irrevocably…committed to [his] Bookkeeping Account under the Plan" to be distributed to him upon "the occurrence of an Event of Distribution as defined in the Plan." Exhibit C.

15. Mr. Rhodes received a copy of the Notice by letter dated March 13, 1989, from Attorney Robert Lloyd, who advised Mr. Rhodes that the original Notice had "been placed in the Compensation Plan record book." Exhibit D.

16. The Plan defines the following events as Events of Distribution: "A. Death or total disability…of the Participant; B. The date upon which the Participant reaches the age of sixty-five (65); C. In the Plan Administrator's discretion, the termination of the Participant's employment with the Employer; and D. The liquidation or bankruptcy of the Employer." Exhibit A at §4.3 ("Events of Distribution") at p. 14. The Plan states that, "The Plan Administrator shall commence distributions to any Participant or to the Participant's designated beneficiary upon the earliest to occur of [one of the] Events of Distribution." Id.

17. Mr. Rhodes resigned from employment with the defendant in 1995. When Mr. Rhodes separated from employment with the defendant, the Plan Administrator, Peter Holden, exercised his discretion not to pay Mr. Rhodes the deferred incentive compensation that Mr. Rhodes had accrued at that time.

18. Mr. Rhodes elected to defer any payments under the Plan until he attained the age of 65, electing to receive a lump sum distribution on that occasion. *See* Exhibit B.

19. Mr. Rhodes turned 65 on December 13, 2014. As distinguished from Mr. Rhodes' 1995 separation from employment with the defendant, Mr. Rhodes' 65th birthday was an Event of Distribution with respect to which the Plan Administrator had no discretion.

20. On or about December 19, 2014, Mr. Rhodes corresponded with Donna Holden, the defendant's Registered Agent. Exhibit E. Mr. Rhodes noted the occurrence of an Event of Distribution (Mr. Rhodes' 65th birthday) and requested payment of the deferred incentive compensation to which he was entitled—a lump sum payment of $60,000.00 plus accrued interest for the 1986 through 1989 Plan Years. Id. Mr. Rhodes further requested that the defendant "provide an accounting for the annual deferred amounts, accrued interest and any expenses related to the plan from 1986 to the current date." Id.

21. By letter dated May 11, 2015, Plan Administrator Holden rebuffed Mr. Rhodes' request, stating in pertinent part that, "It has always been my position that when an employee left the employ of the company their rights in this retention plan terminated." Exhibit F. Plan Administrator Holden's position finds no support in the language of the Plan. The Plan states that an employee became entitled to payment of deferred incentive compensation for a given Plan Year so long as the employee remained continuously employed on a full-time basis "at all times during such Plan Year." Exhibit A at §4.1 ("Employee's Election for Immediate Payment

4

of Benefits") at p. 12.  Nowhere does the Plan state that the employee had to work for the defendant until retirement in order to be entitled to receive the deferred incentive compensation.  Indeed, had Mr. Rhodes chosen to do so, he could have elected to receive immediate payment of the deferred incentive compensation he earned in a given Plan Year at the close of the Plan Year. Id.  Mr. Rhodes chose instead to defer his receipt of the subject compensation.  Nowhere does the Plan state that an employee would somehow forfeit compensation earned under the Plan if the employee separated from employment before turning 65.

## COUNT I

### (Violation of Right to Benefits Pursuant to 29 U.S.C. §1132(a)(1)(B))

22. The allegations of the preceding paragraphs are incorporated herein by reference.

23. The subject Plan is governed by ERISA, pursuant to the statutory principle that all deferred compensation plans are covered by ERISA.  29 U.S.C. §1002(2)(A)(ii).

24. The Plan is a "top hat" plan because it was unfunded and maintained by the defendant primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

25. A "top hat" plan is an "employee benefit plan" within the meaning of ERISA. Carr v. First Nationwide Bank, 816 F.Supp. 1476, 1486 (N.D. Cal. 1993).

26. A "top hat" plan is subject to the enforcement provisions of ERISA codified at 29 U.S.C. §1132(a).  Id.

27. 29 U.S.C. §1132(a)(1)(B) authorizes a participant such as Mr. Rhodes in an ERISA plan such as the subject Plan to bring a civil action to do such things as "recover benefits due to him under the terms of his plan [or] enforce his rights under the terms of the plan."

28. The federal common law of contract governs Mr. Rhodes's rights to recover benefits due him under the Plan and to enforce his rights under the Plan, given the Plan's status as a "top hat" plan. Carr, 816 F.Supp. at 1487.

29. "It is well-settled that "top-hat" benefit plans, which are exempt from ERISA's vesting requirements, are interpreted in keeping with the principles of unilateral contract law." Eastman Kodak Co. v. Bayer Corp., 369 F.Supp.2d 473, 478 (S.D.N.Y. 2005) (citations omitted). Under principles of unilateral contract law, the defendant became bound to pay Mr. Rhodes the deferred incentive compensation he earned in any given Plan Year when he fulfilled the condition that he remain employed on a full-time basis throughout that Plan Year. Once Mr. Rhodes remained employed on a full-time basis with the defendant throughout a given Plan Year, the offer to pay him deferred incentive compensation for that Plan Year, upon the occurrence of an Event of Distribution such as Mr. Rhodes' 65th birthday, became irrevocable, such that the defendant "is required to comply with its side of the bargain." Id. (quotations omitted).

30. The Court should therefore award Mr. Rhodes the benefits due him under the Plan, awarding him $60,000.00 plus accrued interest for the Plan Years 1986, 1987, 1988 and 1989.

31. Mr. Rhodes is further entitled to his reasonable attorney's fees pursuant to 29 U.S.C. §1132(g)(1).

WHEREFORE, the plaintiff Donald B. Rhodes respectfully prays this Honorable Court:

A. Schedule this matter for hearing by Court, and after hearing;

B. Award Mr. Rhodes benefits due him under the "Holden Engineering & Surveying, Inc. Incentive Compensation Plan," including a lump sum distribution in the amount of $60,000.00 plus accrued interest for the Plan Years 1986, 1987, 1988 and 1989;

C. Award Mr. Rhodes his reasonable attorney's fees; and

D. Grant such other and further relief as is just and equitable.

                      Respectfully submitted,
                      DONALD B. RHODES
                      By his attorneys,
                      DOUGLAS, LEONARD & GARVEY, P.C.

Date: February 1, 2016           /s/ Benjamin T. King
                      Benjamin T. King, NH Bar #12888
                      14 South Street, Suite 5
                      Concord, NH 03301
                      (603) 224-1988
                      benjamin@nhlawoffice.com